# CHARLESTON.

STATE *ex rel.* S. M. NOYES, RELATOR *v.* HOWARD C. LANE, CLERK, ETC.

Submitted December 10, 1921. Decided December 14, 1921.

1. MANDAMUS—*Will not Lie to Compel Exercise of Discretionary Power Unless Refusal is Capricious, Fraudulent, or Results from Misapprehension of the Law.*

Mandamus will not lie to compel an executive or administrative officer to do a particular act which he has refused to do where his action depends upon the exercise of judgment or discretion upon his part, unless his refusal is arbitrary, capricious or fraudulent, is based upon no substantial reason, and evinces a purpose to evade the due and faithful performance of his duties, or results from a misapprehension of law. (p. 748).

2.  SAME—*Will Lie to Compel City Clerk to Certify to Council
    Petition to Recall an Officer or Officers Under Provisions of
    Sec. 19. ch. 21, Acts 1915 (Municipal Charters), Being the
    Charter of the City of Wheeling.*

    Where a petition is filed with the city clerk under the
    provisions of § 19, ch. 21 of the Acts of 1915 (Municipal
    Charters) being the charter of the city of Wheeling, to recall
    an officer or officers, which is signed by more than twenty
    per cent. of the legal voters, as shown by the last preceding
    municipal election, the said clerk may not excuse his refusal
    to certify such petition to the council as provided by that act
    in order that the recall election may be held thereunder, upon
    the ground that the affidavit required by § 22 of the Act was
    not affixed to each individual paper constituting the pe-
    tition, but is only affixed to the last page of several of the
    papers bound together as one, after the signatures thereon
    had been procured; nor upon the ground that all of the names
    contained on certain of the papers making up the petition
    must be rejected because some of them were not signed by
    the petitioners in person; nor upon the ground that all of the
    names contained on a particular paper must be rejected be-
    cause the petitioner who made the affidavit to that particular
    paper withdrew his name from the petition after the same
    was filed.  The action of the clerk in rejecting the names
    upon the petition under such circumstances results from a
    misapprehension of the law, and is without any substantial
    foundation, and justifies resort to the writ of mandamus to
    compel him to properly perform his duty. (p. 748).

3.  RECALL—PETITION OF—*Persons Signing Same May Withdraw
    Name at Any Time Before Petition is acted Upon—Effect of
    Such Withdrawal.*

    One signing a recall petition under the provisions of § 19
    of the Wheeling charter above referred to may withdraw his
    name therefrom at any time before such petition is acted
    upon, but such withdrawal will not have the effect of nulli-
    fying the paper upon which his name is signed even though
    he is the petitioner who makes the affidavit thereto. (p. 751).

4.  SAME—*Appellate Court will Not Pass Upon Sufficiency or Truth
    of Grounds Stated in Petition.*

    This Court may not pass upon the sufficiency or truth of
    the grounds stated in a petition filed for the purpose of re-
    calling officers under the provisions of the Wheeling charter
    above referred to.  (p. 752).

    (MILLER, JUDGE, dissents).

                        89 W. Va.

Original jurisdiction.

Mandamus in case of State ex rel. S. M. Noyes against Howard C. Lane, Clerk etc. and others, in the recall of councilmen and city manager of the city of Wheeling.

*Writ awarded.*

*John J. Coniff* and *R. S. Spilman,* for relator.
*J. J. P. O'Brien* and *J. H. Brennan,* for respondents.

RITZ, PRESIDENT:

The relator seeks by these writs of mandamus to compel the clerk of the city of Wheeling to approve and certify to the council two petitions filed under the provisions of the charter of said city, one for the recall of the city manager, and the other for the recall of the members of the council. .

Section 19 of the charter of the city of Wheeling, being chapter 21 of the Acts of the legislature of 1915. (Municipal Charters) provides for holding an election for the recall of municipal officers upon a petition signed by electors entitled to vote for their successors equal in number to at least twenty per centum of the entire vote cast at the last preceding municipal election.    It is admitted that a little less than thirty-five hundred petitioners is sufficient in number to meet this requirement, while the petitions presented in the one case were signed by more than sixty-six hundred, and in the other by more than sixty-eight hundred persons.    The section above referred to requires that the petition shall contain a general statement of the grounds upon which the removal is sought. It further provides that the signatures need not all be on one paper, but that such general statement of the grounds shall be on each paper, and that each signer shall add to his signature his place of residence, and the street and number, and that one of the signers on each such paper shall make oath before an officer competent to administer oaths to the truth of the statements contained therein, and that each of the signatures is the genuine signature of the person whose signature it purports to be.    Upon the presentation of such petition it is provided that the said clerk shall examine and ascertain whether or not such petition is signed by the requisite num-

ber of qualified electors, and attach to said petition a certificate showing the result of said examination.   If the result of said examinations shows said petition to be insufficient it is provided that the same may be amended within ten days, and that the clerk shall thereupon, after such amendment, make further examination, and if he ascertains the same to be sufficient he shall submit the same to the city council without delay, who shall thereupon order and fix a day for holding said recall election.   If, on the other hand, the clerk finds said petition, as amended, to be insufficient, he shall return the same to the parties presenting it with his certificate to that effect.   Section 22 of the Act provides that petitions provided for under the provisions of the charter shall be signed by none but legal voters, and that each petition shall be accompanied by the affidavit of one or more legal voters of the city stating that the signers thereof were at the time of the signing legal voters of said city.

Each of the petitions involved in these proceedings consisted of many sheets of paper.   In some cases several sheets of paper were bound together and so filed, while in other cases each sheet was filed by itself.   Printed at the head of each sheet so used, whether the same was bound together with others or not, is a statement of the grounds upon which the recall of the officers is sought, and at the bottom of each of these sheets is an affidavit in the form prescribed by § 19.   There is also printed at the bottom the form of an affidavit as prescribed by § 22, but in some of the cases where several sheets were bound together the affidavit called for by § 22 is made only upon the last one of such sheets, the whole thereof being treated as one paper by the petitioners.   The clerk of the city passed upon these petitions and found that they only contained about 1500 names which could be considered by him, and about 500 about which he had doubt, but that even considering this doubtful 500 there was only on the petition about 2000 names which could be treated as meeting the requirements of the Act, and this being an insufficient number, he certified that the petitions were not signed by the requisite number of legal voters.

The petitioners contend that the action of the respondent

in refusing to consider by far the larger part of the names which he held could not be considered was arbitrary, capricious and fraudulent, and was without any substantial basis, wherefore they seek to compel him by mandamus to certify these petitions as provided by the Act. The respondent insists that whether or not he correctly decided the questions presented to him cannot be reviewed by this Court by writ of mandamus; that so long as he acted honestly and in the belief that the law required the conclusion reached, he cannot be compelled by mandamus to take any other action, but his action must be reviewed, if at all, by *certiorari.*

It is quite true that where an executive or administrative officer is required to do an act which involves the exercise of discretion by him, such discretion will not be controlled by mandamus, unless it appear that his action is arbitrary, capricious or fraudulent, or results from a misapprehension of law. This doctrine is very well established in this state. *Dillon* v. *Bare,* 60 W. Va. 483; *State ex rel, Dodd* v. *Hill, Banking Commissioner,* 84 W. Va. 468. The relator does not contend for any different doctrine, but he does insist that a consideration of the petitions themselves which are presented as evidence in these cases, as well as of the reasons given by the clerk for his action, lead irresistably to the conclusion that his conduct was arbitrary, capricious or fraudulent, or all three, and finds no support except in the most artificial reason. This makes it necessary for us to review at least some of the grounds upon which the clerk acted in rejecting these petitions, and of course if we find that his action has a substantial basis in fact or reason, the writ will not be granted, notwithstanding we might be of opinion that he came to a wrong conclusion. If, on the other hand, we should be of the opinion that the grounds for his rejection of the petitions are purely artificial, and without any substantial basis, we will be constrained to hold that the writ of mandamus will lie to compel him to certify the same to the council as required by law.

It appears that by far the larger part of the names were rejected by the respondent because of the failure, as contended by him, to verify the petitions as required by § 22 of

the Act. In many cases, as before stated, a number of sheets of paper were bound together upon which were contained the names of the petitioners, and at the bottom of each sheet an affidavit is affixed as required by §.19 of the Act, and then to the last sheet is affixed the affidavit required by § 22 of the Act. The contention of the clerk is that the affidavit required by § 22 of the Act affixed to the last page of the paper under the circumstances here could not be considered as an affidavit applying to the names contained upon anything but such last sheet, for the reason that the signatures on these sheets, each one of which contained at the top the grounds for removal, were appended before the papers were bound together, and the affidavit required by §22 affixed thereto. In other words, it appears that after the signatures were obtained on a number of these petitions or papers, as they are called, they were bound together with an affidavit as provided by § 22 which appropriately referred to the several papers attached, but which were actually fastened to the affidavit after it was made and in the absence of the party making it. The clerk's contention is that inasmuch as these sheets of paper were bound together after the signatures were placed thereon and the affidavit made under those circumstances, it cannot be considered as an affidavit covering all of the sheets thus included. There is nothing in this contention. Section 22 does not require an affidavit to each separate paper as is provided by § 19. One man might make the affidavit to the whole petition composed of all of the papers so far as § 22 is concerned, and it would be entirely sufficient. Of course, he would have to have pretty full knowledge of the voting population of the city in order to be possessed of the information necessary to make such an affidavit, but there is no reason why, after the signatures were procured upon separate papers, any voter could not make the affidavit required by § 22, applying it to all of the papers to which his knowledge extended. All that this affidavit is required to show is that the signers of the petition were at the time of signing the same legal voters of the city. It seems to us that this conclusion of the clerk by which he refused to give effect to thousands of names appearing on these petitions was without any substantial basis. The

names rejected on this ground alone taken together with those admitted by the respondent to be proper are sufficient to require the calling of the election.

Another reason given by the respondent for refusing to consider some of the papers was that some of the names thereon were not signed by the parties in person. He contends that some of the parties whose names appear upon the papers stated that they did not sign the same, and he also states that in these cases those who procured the signatures stated that such names were signed by the wife or husband, or some other member of the family of the petitioner, and whenever he found one of these papers upon which any names appeared that were not signed by the petitioner in person he rejected the whole paper and refused to consider any of the names contained thereon. It may be doubted whether upon the inquiry which the clerk was called upon to make he could inquire into the genuineness of the signatures. Under the statute, the affidavit appended to the petitions made them *prima facie* evidence of what they contained, and we do not think the clerk would have a right to institute an *ex parte* inquiry as to the genuineness of any of the signatures. It may be that if any of them were challenged an inquiry could be conducted before him upon notice to the proponents of the recall election to determine the questions, but upon this we express no opinion at this time inasmuch as the question does not now arise. We do say, however, that his refusal to consider any of the names on a paper simply because one or more of them were not the genuine signatures of the petitioners was not justified. Certainly the most that he would be authorized to do in such a case would be to refuse to consider those names shown not to be genuine.

Another ground given for refusing to consider a number of the names is that the signers failed to give their addresses by street and number, in some cases giving their address as a certain hotel in the city, or a certain apartment in the city. The number of names rejected on this account does not seem to be substantial, and we are not prepared to say that the action of the clerk in this regard could be treated as arbitrary or capricious, although the action of the petitioners in giv-

ing their addresses as they did certainly came within the spirit of the Act. The purpose in requiring the petitioners to give their addresses by street and number was in order that anyone interested might set upon foot an inquiry for the purpose of determining the genuineness of the petition, as well as whether or not each of the petitioners is a voter. Where this address is given by the name of a well known hotel or apartment house, the purpose is accomplished just as well as though the street and number were given—in fact, in most cases, a great deal better, for it is rarely that the people generally know the street number or street address which such buildings bear.

Another considerable number of names contained upon the petitions were not counted by the respondent for the reason that they desired their names withdrawn and erased therefrom, and it is insisted by the relator that these petitioners had no authority to withdraw their names after the petitions were filed. We do not think there is merit in this contention. There is no reason why one or any number of the petitioners might not withdraw their names at any time before the petions were acted upon, and in case they did so, of course, they should not be counted to make the number required by the statute for calling an election. In some cases the party who made the affidavit required by § 19 withdrew his name from the petition, and in that event the respondent refused to count any of the names upon such paper, his theory being that after such name was so withdrawn there was no affidavit to the paper made by a party signing the same as required by § 19. There is nothing in this contention. All that section 19 requires is that one of the signers shall make an affidavit in the form therein prescibed. He must be a signer when he makes the affidavit, and not only would it be against the spirit of this Act to allow one man who had made the affidavit to the petition to destroy the effect of it as to all of the others by subsequently withdrawing his name, but it would violate the exact letter of it.

Other names were rejected in small numbers for other reasons, but practically all of the rejections were based upon one or the other of the grounds above assigned. If these reasons

be denied as grounds for excluding names from the petition, there would remain thereon, many more than the number required for calling an election. We are of opinion, as before indicated, that there is no substantial reason given by the clerk for the exclusion of the several thousand names upon the grounds above indicated.

The relator also contends that the petitions are not sufficient in these cases, for the reason that the grounds stated therein upon which it is sought to recall the officers are untrue. We cannot enter upon an inquiry as to the truth or falsity of the grounds relied upon for the recall. That is a matter which must be considered by the electors when they come to cast their ballots in the recall election. The statute contemplates that such an election shall be held whenever 20 per cent. of the voters conceive that there exists a sufficient ground therefor, and it is not for this Court to say that the grounds assigned are insufficient to justify the recall of the officers if true, or to enter upon an inquiry as to whether or not they are true. Whatever our individual opinions may be as to the policy of such legislation, we cannot refuse to give it effect when the legislature has deliberately enacted it. There is no provision in the Act for any authority passing upon the sufficiency of the grounds of removal other than the 20 per cent. of the voters who must petition in the first instance, and the whole mass of the electorate who must ultimately pass thereon.

We are of opinion that the petitioners had a clear right to have their petition certified to the council by the respondent as required by the Act, and that in refusing to do so respondent clearly misapprehended the law governing the case.

The writs of mandamus prayed for will, therefore, be awarded.

*Writs awarded.*